Number 18-1806 is Cisco Systems v. TQ Delta and Aris v. TQ Delta and you've divided your time as to the two petitioners. You're Mr. Foster? Yes, Judge Newman. Okay, please proceed. Thank you and may it please the Court. The Board wrongly construed the term synchronization signal by narrowly requiring it to comply and limiting it to the preferred embodiment found in column 5 of the 404 patent. You argued that the Board erred by having a markedly more restrictive construction than the District Court. Yes. What authority do you have for your underlying proposition that if the PTAB's construction is narrower than the District Court, it can't be the BRI? So we cited to the Facebook v. Pragmatist case, which I understand was not itself precedential. In the time since the briefing, the Court has issued another case, In Re CSB Systems International, that's at 832 F3rd 1335. And at page 1341 of that opinion, the Court said, if anything, the Phillips standard would result in a more narrow claim scope. So the Court, in a precedential opinion, has affirmed that the broadest reasonable interpretation, which is the interpretation applicable here, needs to be at least as broad as the Phillips standard, which is applicable in District Court. And is the standard that the District Court applied here in finding a much broader interpretation, and specifically an interpretation that's quite consistent with the interpretation proposed by Cisco, and quite similar to the construction proposed by a patent owner itself, and supported with the testimony of their expert. And that is in the record at appendix page 1479. Thank you. So we believe that the proper construction should be that proposed by Cisco, or the substantially similar proposals from TQ Delta in its preliminary response, which in its full response it stated it continued to believe was correct, or the construction taken by the District Court. Isn't the board correct, though, that there's a difference between the synchronization signal and the synchronization frame? So the board is correct that the claim requires and recites both a super frame, which includes a synchronization frame, and it separately recites receiving a synchronization signal. And those are two different things, right? Those are two different things. A synchronization frame is a chunk of data that occurs at a certain time? The synchronization frame is the period of time at the end of a super frame. So it's a period of time. So if you have a super frame of 69 frames, the synchronization frame would be the 69th one? That's correct. And it has a symbol. It has something that flags it as the last page in the deck, so to speak, the last card in the deck. Well, the fact that it is the 69th frame is what signals that it is the last one. And the frame is data, yes? The frame is a way of encompassing data. The frame is a period of time. The data transmitted during the frame is the symbol. And that's made clear in the patent itself in column two, where it explains that this is in column two at line seven, appendix page 54. The period of time allocated for transmission of a symbol is a frame. So there's a distinction between a symbol and a frame. And Cisco relied on that distinction in making its petition, making its case for obviousness. Cisco pointed to the synchronization frame of the ANSI standard as the synchronization frame called for in the claim. And it pointed to the synchronization symbol transmitted during that frame as the claim synchronization signal. No, but a synchronization signal is a different animal, is it not? The claim is quite broad and doesn't identify- I'm not referring to the- I'm just trying to get a handle on the concepts here and the language here. The synchronization signal is a clock signal, right? It's a signal that causes synchronization. The claim itself does not say how the synchronization occurs. And that is part of the board's error. to the preferred embodiment, which uses clocks for synchronization. Other techniques- What else would you use a synchronization signal for other than to synchronize two different transceivers? I agree it could be used to synchronize two different transceivers. The problem with the board's construction is that it limited it to synchronizing clocks within that receiver. That was the first error. What's wrong with that? The claim doesn't require clocks. There's no limitation in the claim requiring that a transmitter or receiver have a clock. Yeah, but then you're trying to take it one step further. You want to get rid of the clock limitation so that you can read synchronization signal to mean broadly just synchronizing two transceivers. Which would be broad enough so that it would arguably read on a synchronization frame. Respectfully, Judge Lin, if I can continue, I see I'm into my rebuttal time, but if I can answer your question. Please answer the question. We're not trying to remove a clock limitation. We're pointing out that there is no clock limitation in the claim. And again, the problem, as I see it, is that you're doing that simply because you then want to get into the argument about what the references teach in terms of synchronization frames. And it seems to me that those are different concepts. Well, I'm not sure I entirely understand your question. I would point out that the board misunderstood Cisco's position and mistakenly believed that Cisco was relying on a synchronization frame as being the synchronization signal. And that's simply incorrect. The signal is within the frame. The symbol transmitted during the frame, that is what Cisco identified as the synchronization signal. And that was clear in the petition. It was made clear again in the petitioner's reply at pages 344 and 345. We identified the symbol as the signal. And if you look at the board's decision here at page 14 of the appendix, the board inaccurately states that the petition relies on the synchronization frame as teaching the synchronization signal. And that's simply incorrect. And the board erred in understanding Cisco's position. So the frame is a period of time. Yes. And the signal is effectively a period of time, is it not? It's the last part. The signal was not construed as being a period of time. The signal was construed here as a signal allowing synchronization between clocks, which is not a period of time. But what you're saying to us is that there's a synchronization signal within the frame. Yes. What is that signal? It is the synchronization symbol, which is the... And the symbol is the last sub-part of time, right? The symbol is the information transmitted during that last period of time in a super frame. But is it the symbol that makes it a synchronization frame or the fact that it's the 69th frame? What is it that makes it a synchronization frame? It is a synchronization frame because the synchronization frame is a synchronization frame because it is the last frame. Because it's the 69th in a 69 frame super frame. Yes. And the synchronization... It has nothing to do with the data contained within it, correct? I believe that is correct. So why are we discussing a symbol? Because the symbol is what Cisco identified as the synchronization signal that is separately recited. And the synchronization symbol is what's used to correct for timing errors. And that makes it a synchronization signal. Okay, now you're sharing your time with Mr. Gresham. Are you going to take up a different issue? Yes, I'd like to take up a different issue. The discussion that I'd like to make is that Eris pointed out when the patent owner filed a response and made these claim construction arguments that the panel has been discussing this morning. Eris pointed out in its reply, even if the board accepted the construction that TQ Delta had offered, that the petition still showed that the synchronization signal was met even under that narrowed construction and even under the board's ultimately narrowed construction in the final written decision. Well, I'm sorry to take you away from where you want to go. Yes. But on page 35 of the Eris blue brief, you say that PTAB failed to understand that the claimed synchronization frame and synchronization symbol elements are separate though related attributes necessarily present in any DSL transceiver, including the transceivers described in 404 and Venzelium. Tell me the authority for that proposition. I want a further explanation. Okay. The authority for that proposition first is there's really no dispute that there's anything inventive in the 404 patent with regard to the full power mode. And that's where the board made this big distinction that the full power mode, you receive the synchronization frame, which basically defines the structure of the data. It's broken down into these 69 time periods. Is there a symbol in that 69? Yes. The symbol is the data that is transmitted during that particular time period. And that's the distinction that Mr. Foster was making, and that's a distinction that Eris agrees with. But is that symbol different in character from the symbols that are in any of the other frames in the super frame? Yes, the symbol is a, the data transmitted in that final frame is the symbol that demarcates the end of a frame and the beginning of a new frame. It's always the same. Just wait, wait, wait, wait. The symbol in that 69th frame is what signals that it's the end of the super frame or the fact that it's frame number 69. Well, the receiver is looking for frame number 69. If the receiver receives frame number 69 and does not receive the symbol, then it knows it's out of synchronization. So the symbol has to be received during that particular time period, transmitted and received during a particular time period, in order for the receiver to, that's right. What is it in that symbol that is special? I mean, are you just saying it has to receive some data to signify that there was, in fact, a 69th frame? It has to receive the same data, the symbol that is transmitted during that time frame, in order for both sides of the transmitter and the receiver to be in synchronization. But, I mean, not to avoid this issue, but what I was trying to do, and this is what we tried to do to keep the board from going down the rabbit hole of this, is first, full power mode was never in dispute. Second, the court heard this morning the case preceding ours. That case involved the very same references that Eris raised in our case. And in that case, the board specifically held that Van Zingelam's pilot tone teaches the recited synchronization signal. The board held that in the 1799 appeal. In our appeal, Eris made the same argument in reply to the alternate claim construction offered by TQ Delta, and the board pointedly refused to consider that portion of the reply. And in doing so, Eris, in the reply, pointed back to the petition. They did not raise a new argument. The petition basically discussed what was known as frequency synchronization and frame synchronization. Eris proposed the construction that the term synchronization signal be construed as a signal allowing frame synchronization. The board accepted that in the institution decision. In the patent owner's response, TQ Delta came back and said, no, no, you're focusing on frame synchronization. It really should be construed as only applying to frequency synchronization. In reply, Eris said, we don't agree with that, but if the board goes down that road and adopts that construction, we want to make it easier for the board to reach a decision. Our petition shows how the references teach both frequency and frame synchronization. And we pointed back to the petition and showed how the frequency synchronization is taught in view of the pilot tone. And that is at appendix 2339, when we described how the Venziglum reference works. We described the pilot tone. It was admitted by the patent owner that Venziglum teaches the pilot tone, which the board found in 1799 meets the synchronization signal. But the board refused to consider it in our case. And we think our argument and our alternative argument is freely governed by this court's decision in the Erickson versus Intellectual Ventures case that's cited in our reply brief. It was a case decided after we filed our appellate's brief, but it's at 901 Fed 3rd 1374. We think we're on all fours with that case. In that case, the board initially adopted construction proposed by the petitioner. The patent owner's response resulted in a change of construction. The petitioner pointed back to the petition and said, we meet that construction. The board refused to consider it. This court reversed and basically told the board, you committed clear error by not considering that reply because it was made in view of the petition. And I'd like to reserve what little time I have for rebuttal. Thank you. Mr. Chiplunk. I'm going to start with the Aris petition first. The Aris appeal first. The court should affirm the PTAB's finding that the claims of the 404 patent are not unpatentable. There is no dispute that in its petition, Aris pointed to the synchronization frame described in the T1.413 standard as teaching both the claimed synchronization frame and the synchronization signal. Based on this understanding, Aris proposed a construction for synchronization signal as a signal that allows frame synchronization. TQ Delta disputed that construction. In its reply, Aris sought to change its invalidity theory by pointing to a new element from the standard, the pilot tone, to argue that the pilot tone limitation teaches the synchronization signal and the synchronization frame limitation, the sync symbol from the T1.413 standard teaches the synchronization frame. The board found that this was a new theory, and they refused to consider this argument. Aris recognizes that the board's determination of whether a reply exceeds the scope of a proper reply in violation of 37 CFR is reviewed for an abuse of discretion. Here the board exercises discretion and correctly found that Aris' reply constituted a new theory. Under the proper construction of synchronization signal, the board found that Aris' original invalidity theory that it proffered in its petition was deficient. That should settle the matter. They argued for a construction. They had an invalidity ground that was based on merely the synchronization frame in combination with the Bowie reference. In their reply, they sought to come back and add another teaching from the evidence that wasn't relied on in the petition. But why not? They were replying to what you had raised. They are replying with a new ground. They are replying with new evidence. They were free to argue. Of course, because of the argument which had been presented. And so they said, well, in that case, there is this additional response. Well, what's wrong with that? What's wrong with that is it added... It wasn't just evidence. It changed their invalidity theory. Their invalidity theory was synchronized sync frame from T1.413 standard plus Bowie renders receiving a synchronization signal in full power mode. It teaches it. That was their position. They came back and they sought to rewrite their reply to say, no, here's an additional signal, the pilot tone, that we now want to add into our combination to render this element... Because of the defense that had been raised, they were replying to that information presented in response. And therefore, they said, well, in that case, there is something new. What's troubling, had all of this taken place in a federal court, in a district court, of course, all available information must be considered to cut it off because it wasn't presented at the threshold of the administrative process. It is extremely troubling. It seems to me that what's appropriate is to consider the merits of all aspects of the technology to try and get it right. And here we are trying to get it right. And you say, well, no, there's this evidence which could change the result. But because this is an administrative agency, the bureaucracy has spoken. Yes, in some ways, the administrative agency says that a petitioner should make their case in chief in their petition. They set the table based on their petition. And those are the ground rules. And the board does allow you to respond to... does allow a petitioner to respond in their reply. The board retains discretion to determine if something crosses the threshold from being just a proper response to something that exceeds the scope of the response. In this case, the board found that changing the theory of invalidity to include this pilot tone exceeded the scope of their initial invalidity theory. That's essentially what the board found. So if they did not receive any semblance of federal due process in the agency, where does the estoppel come in, which would take place in an infringement suit, and all the rest of it? Our goal is really to find the right answer using the standard procedures of litigation. And here we have the agency interposing some rules which might apply at threshold examination. But these are judicial processes taking place. Your Honor, the PTAB's rules cut both ways. There are instances when a new argument, a patent owner believes a new argument is raised in a reply. The board finds the other way and does not give a patent owner a chance to provide a surreply because the board can exercise its discretion to determine if a surreply is proper. So the way the Wally is set up is those are the rules of the game. You get a petition, you make your case in chief in the petition, and you get to reply and the board decides if a reply was a proper scope. All the statute requires of the petition is one to show that one claim might be vulnerable and then the rest of it comes out during the litigation procedures. Yes, but consider a district court case if you want to consider a district court case. You have an invalidity theory. You provide an invalidity contention. It's in your contention chart. That's the contention you're stuck with. Even when the expert's on the stand and if the expert tries to rely on a new reference or teaching from a reference to bolster his or her invalidity case, the other side can object and the judge doesn't let it come in. That's essentially what happened here. Though, of course, it happened at the reply stage, but it's common even in district court litigation where a party is held to their infringement contentions and they're held to their invalidity contentions. Just because there's an evolving understanding of the record doesn't allow a party to change their invalidity grounds when there's no option for the patent owner to respond to these new invalidity grounds. Counsel, let me take you to some of the merits. I'm looking at 4445 of your record where you're discussing crime synchronization and the arguments made by Harris. I want to take you towards the bottom. You say that Harris didn't provide any expert testimony regarding synchronizing counters and you say instead Harris just pointed to the language and the specification about synchronizing the frame counters and made conclusory statements that the synchronization signal was properly construed as a signal allowing frame synchronization between the transmitter and the receiver. And then you leap to, accordingly, because frame counting is not the same as frame synchronization, the section of the specification relied upon by Harris does not support its construction of synchronization signal. Supposing we disagree with you on your underlying premise based on our prior discussions and we agree with Harris that it is synchronization signal is properly construed the way they say. What does that do to your argument? Synchronizing... Your Honor, just to understand your question, your question is... The question is if we agree with Harris on its prior arguments about synchronization signals, what does it do to your argument here in defense of the board's position? I think it doesn't change the argument that much. One of the reasons the board found... The reason I'm asking that question is because you base everything following on the presumption that you were correct. We were correct because that is what the patent specification teaches of what a synchronization signal means. The board construed synchronization signal as the signal 62A, which allows the clock at one end to operate in synchronism with the other. In fact, the word synchronism appears several times. If frame counting is the same as frame synchronization, what does that do to your argument? Let me put it that way. It doesn't harm our argument because, like the board said, the claim requires two distinct elements, synchronization frame and synchronization signal. By referring to the synchronization signal as something that does frame synchronization, you essentially are conflating the synchronization frame that's being received in the full power mode and the synchronization signal that is also being received in the full power mode. But the synchronization signal also triggers frame counting, correct? In other words, the frame counter is connected to the clock. It is one of the things it's used for. The clock is used to keep time. So the two are associated together, are they not? We disagree. The goal of frequency or timing synchronization is to keep the PLLs at either end in lock so that if you're operating at 50 kilohertz on this side, you're operating at 50 kilohertz. But is it not then important to associate the frame counter with the clock? No, the frame counter moves by counting these individual frames as they're coming in. The frame counter is keeping track of frame counter 1, 2, 3, 4, 5 as they're coming in. Doesn't the frame counter receive a signal from the clock? The frame counter is keeping track. I thought that's what, if you look at figure 2, I'm sorry, figure 1, clock 30, it's connected through the controller 32 to the frame counter 34. Yeah, it's going, the clock's going to the controller, and the controller is something like a computer, if you will, that's just keeping track of, is just counting the frames. So at the end of the day, the clock is the heart of that machine. It's what keeps the machine, you know, going. It's the metronome. That drives all the operations. But maintaining synchronization means maintaining your clocks in synchronization. Nothing else is going to work if your clocks are not synchronized. And that is what the board's construction addresses. The board's construction says that you use a clock signal, the synchronization signal is used to keep the two clocks synchronized. And our position is that the board got the construction correct. At page 51, you characterize Eris making a peculiar argument, and then you respond saying, this argument has nothing to do with whether the board erred in its construction of synchronization signal. And then you say, second, whether Eris showed that the prior art teaches the limitation of receive in the low power mode, a synchronization signal, is not an issue on appeal. What do you mean by that? Is that a concession on your part? No, it's not a concession. The board did not get, the board got to the third element of the claim, which is receive in full power mode a synchronization signal, and found Eris's petition to be deficient in that they hadn't shown a teaching in the prior art of a synchronization signal under the correct construction. So they did not go down to the other elements of the claim to investigate if receiving in the low power mode a synchronization signal is met by the combination. The board never reached the merits of that argument. So there is nothing, you know, there is no art, there is nothing in the final written decision directed to, directed to that element of the claim, receive in the low power mode. I'm not sure why that doesn't make it an issue in the appeal. It may be that they erred in not doing it. Is that not correct? The board addressed, the board addressed the arguments made in the petition, and I don't believe the board is required to address every argument made. Once they've shown that the petition is deficient and the claims are not unpalatable, they don't need to keep going and addressing each and every limitation of the claim once they've made a determination that the claim is, the claim is not unpalatable at least for one reason. Okay. I would, I would like to turn to the Cisco argument in the one minute that I have left. Cisco pointed, Cisco's petition pointed to the synchronization frame as teaching both the claim synchronization frame and the synchronization signal received in full power mode. Cisco in its reply continued to press this understanding. The board disagreed and based on an in-depth analysis of the patent specification concluded that the claim synchronization signal is only used for timing synchronization and based on that understanding adopted a construction. In its appeal, Cisco makes several arguments. Several of these arguments are new. They were never made, they were never made in any of the papers down below. We've mentioned that in our briefs that certain of these arguments were waived. This distinction that, that they're trying to draw between a synchronization frame and a synchronization signal and what data is in a synchronization frame is the synchronization signal. These are arguments that appear nowhere in the record below. This is an argument created of whole cloth. Their expert, their expert devoted merely a paragraph in his expert report regarding this claim element. Cisco comes back in its brief here with four pages of evidence that has never been cited for this proposition. I'm out of time here. One last sentence. Okay. Cisco argues the board erred because it misinterpreted Cisco's argument that was relying on the symbol transmitted within the frame as disclosing the synchronization signal. The distinction that Cisco seeks to draw was never raised below. TQ Delta pointed out in its POR that Cisco was improperly relying on the synchronization frame as teaching both. Cisco did not reply, did not come back with all this evidence in its reply and said, no, Cisco should have clarified, no, we are pointing to two different things. They did not come back in their reply and point that out. Instead, now, they come back with four pages of new argument. Cisco also argues that this court should entertain the attorney argument offered during the oral hearing at the PTAB. This argument was a new theory that was never argued in any papers. No experts opined on it. Under Delvey-Exceleron line of cases, the board was correct in not entertaining any of the arguments that were made at the oral argument. Thank you. Thank you, Your Honor. I'd like to address opposing counsel's statement that Cisco is making new arguments here on appeal, and I direct the court's attention to appendix page 345. There, this is part of the petitioner's reply that was filed in the case below. We stated that the petition establishes that a posita, a person of ordinary skill in the art, would understand that a synchronization symbol in the ANSI specification is a type of synchronization signal because it is used to maintain timing synchronization with a remote transceiver. Cisco was very clear, first in its petition, and even more clear here in its reply, that what it was relying on to teach the claimed synchronization signal was the prior arts synchronization symbol. And the allegations that that is a new argument are simply inconsistent with the statement that I just read from the record. Then, Judge Lynn, you asked a question about what is it about the synchronization symbol that makes it special, and I'd like to answer that question by directing attention to appendix page 1319 and 1320, where the synchronization symbol is described in the ANSI standard. And specifically on page 1320, it explains that there's a specific data pattern used to generate the synchronization symbol. It's defined by a particular pseudorandom sequence, which is a defined data pattern provided under the standard, and that is what allows both the transmitter and receiver to know that this data is the synchronization symbol. Square answer. Thank you. Thank you. Thank you. Thank you. Mr. Gresham. Very quickly, I'd like to point out that in the 1799 appeal, which involved the same references relied upon by Aris, notably TQ Delta did not challenge on appeal the court's finding that the pilot tone taught the synchronization symbol. There's really no dispute, especially with regard to full power mode, and we cited this in our brief, that there's all sorts of admissions that full power mode is shown by the ADSL standard, period, paragraph. There's nothing inventive about the full power mode. I would just like to point out with regard to the reply in the argument, TQ Delta, one of their final arguments faulted Cisco for not raising some argument in the reply, and said the board was correct in not considering it because it was not in the reply. Aris did raise an argument in the reply. The board did not consider that, and TQ Delta also says that that's correct. The board didn't abuse its discretion. We submit that this court has squarely held in the Rivalma case, the court said when a patent owner argues for a claim construction in its response, a petitioner can and should, quote, present a case for unpatentability under that construction when it has the opportunity in its reply. The party in that case didn't do it in the reply, and the court essentially held that they had their chance in the reply, and they didn't address it. Aris did address it in the reply, and the board refused to consider it. We would also say if the board affirms the 1799 case, then that would also be dispositive of this case, because basically that case challenged the same patent on the same grounds. The only difference being that that case did not address some of the dependent claims, and Aris challenged all the claims 1 through 20, and there was no argument below whatsoever of any independent patentability of the dependent claims, except for the patentability of the independent claims. Okay. Thank you. Thank you all. Thank you. Thank you.